We'd be happy to hear argument in a first case United States v. Taylor and Mr. Thorpe. Thank you, Judge Wilkinson, and thank you also, Judge King and Judge Berger, for hearing from us this morning. My name is Paul Thorpe. I'm a member of the North Carolina Bar, and I represent Nayna Taylor, a defendant in this matter. Ms. Taylor, at all relevant times, was a shop owner in Charlotte, North Carolina. She ran a business called Queen City Smokes and sold a variety of items, including cigarettes, tobacco, pipes, rolling papers, artwork, jewelry, jewelry cases, bath salts, decorations, deodorants, soaps. In July of 2016, she was indicted by the federal government, and the government alleged that she was involved in a conspiracy with other persons to intentionally possess with the intent to distribute a controlled substance analog. The two analogs that she was accused of possessing with the intent to distribute were MDPV and APVP. The allegation that Ms. Taylor dealt with MDPV came from a single line of testimony from one of her alleged co-conspirators, Robert Schroeder, who testified that Ms. Taylor had made some purchases in 2011. The only documentary evidence connecting Ms. Taylor to any purchases of any items in this case don't come until April of 2012, and at that time, pursuant to the testimony of defendant Bradley and Mr. Schroeder and other alleged co-conspirators, the operation had shifted to producing APVP. And so Ms. Taylor has made the argument that there's not... In the conversation, she talked about the issues that she had with law enforcement, and why would that be something that the jury could... That conversation seems pretty incriminating, and why couldn't the jury take that into account in establishing men's rights or center? The jury could take that conversation into account. However, in the context of that conversation, the government informant was using terms that sought to prompt Ms. Taylor into making incriminating statements. And the only statements that Ms. Taylor made that the government contended were incriminating was that back in 2013, she had had long lines at her shop where people were purchasing a product that could not have had APVP at that time in it, based on the government's own evidence. She also mentioned that there was a particular police officer in her neighborhood that had singled her out because she didn't like her, who was giving her a hard time about pipes with bubbles on the end. But isn't that for the jury to interpret that kind of evidence? It is. However, the evidence relating to Scienter against Ms. Taylor was extremely weak in this case. If you compare it to other... Weak's enough. I mean, if you have weak evidence, we look at it and likely explain it to the government. Well, the government had to prove three things with respect to Scienter. It had to prove that Ms. Taylor ended the crystal bubbly packets, which were packaged, they were labeled not for human consumption, and they were intended to be for a bubble bath, crystal bubbly bubble bath packets. The government had to prove, one, that she intended these for human consumption, and there was no evidence that Ms. Taylor was selling these with the intent that humans consume them using one of the methods described in the analog statute. Secondly, the government had to prove that there was a substantially similar chemical structure between the alleged analog substance and a controlled substance. And three, the government had to prove either that the substance produced similar physiological effects or that she represented to the buyers of the product that it had those similar physiological effects. And there was simply no evidence that she intended these for human consumption or that these items had a similar physiological effect to a controlled substance or that she represented that to a third party. When you compare this to the other analog cases like McFadden, McFadden's a very similar case, Mr. McFadden in that case was selling... When I read the instructions here, I was interested in the instructions and how they matched up with McFadden. And it seemed to me you got a pretty decent instruction that said that under McFadden, knowledge can be established in two different ways. Number one, that the person actually knew the substance was scheduled. And number two, the defendant knows that he's distributing this substance even though he doesn't... He knew the properties of the substance even though he didn't know the technical effect of whether the substance was listed or not. And so McFadden says, okay, you have these two different ways that the government can prove men's right. And then it seemed to me as far as I could tell that the instructions tracked those two different ways that McFadden set out, didn't they? One critical piece was missing and that is the prior case law before McFadden kind of made this distinction between disjunctive and conjunctive. The McFadden case in footnote two made an apparent endorsement of the conjunctive reading of 21 U.S.C. 802.32. And the two Roman numerals two and three in that definitional section provide that proof can be made that the defendant knew that the physiological effect was similar or that he or she represented it as such to the buyers. That piece, representing it as having those physiological effects, is nowhere in the instructions. And I would submit that that is what the prosecution and the government paged a case on against this defendant. So essentially there was a finding of guilt on something that the jury wasn't even instructed on. I've got to go back to what I said. In terms of the men's right, I thought, did she not take the initiative in arranging the meeting with the informant in 2015? No, I don't believe she did. Well, the whole purpose of it was to arrange a sale. It was a sale of Crystal Lee in Burlington, North Carolina. The conversation indicated she knew she was meeting with him to arrange a sale, and that the conversation, the jury could have interpreted the conversation not only that she knew she was arranging a sale, but that she knew she was dealing with a federally controlled analog. I disagree with the second point of that statement. Looking at the totality of the evidence against Ms. Taylor, there's simply no evidence that she knew she was dealing with a controlled substance or analog thereof. Okay. Thank you. Thank you. Let me ask you this. Did you represent her at the trial? I did not, Your Honor. Okay. Thank you. I'm sorry. Mr. Heroy. Thank you, Your Honor. Good morning, and may it please the Court. My name is Rob Heroy. I represent Mr. Ed Taylor. He is the husband of Naina Taylor, the Charlotte couple that was addressed there. I plan to devote the majority and likely the entirety of my argument addressing concepts of venue. I know that venue is not necessary. Did you preserve his venue issues? Yes, Your Honor. Properly before the district court? You raised them? Yes, Your Honor. As to every count? Or is your man in every count? He's not in every count. I believe he was down on the conspiracy counts, Your Honor. Pardon? I believe he was convicted on the conspiracy counts, Your Honor. Well, there's four conspiracy counts. Yes, Your Honor. I don't recall exactly which counts it was. Did you think that this venue stuff was sufficiently preserved? I would say it was, Your Honor. It was raised at the trial. Yes, it was, yeah. Did you ask for it to be submitted to the jury? Yes, Your Honor. There was a requested jury instruction as to venues submitted by Mr. Taylor. And that's... It was rejected, wasn't it, Counsel? Yes, Your Honor. That was on page 389. So you preserved it and requested instruction. Did that cover all the defendants? I mean... That was Mr. Taylor. I can't say for certain for the other defendants. All right. Did you represent him at the trial? I did not. Actually, none of us represented any of the individuals at trial except for the government, Your Honor. What, did the other lawyers withdraw, or did you all... How did y'all end up new lawyers here? This is a big record for you to try to pick up and go with. It is, Your Honor. I think it came down to Mr. and Mrs. Taylor were out of Charlotte. Mr. Thorpe and I are out of Charlotte, and that's how things kind of happened that way on appeal. Well, the venue in these conspiracy cases is pretty broad for the reason that we don't want situations where we're trying separately people in one trial after another. When they're part of the same conspiracy, we don't want them in separate trials all across the country. In the Whitfield case, the United States says, I mean, the Supreme Court says that venue in a conspiracy charge is proper in any district in which any co-conspirator performs an over-adapted furtherance of the conspiracy. And what you have here is a conspiracy that, as I can tell, begins in China and then goes through Mr. Schroeder. Where is Mr. Schroeder? In Chicago? Chicago. I think he's also in New Jersey at some point as well. I think he's also in New Jersey at some point as well, Your Honor, but he's up in the Northeast. The point is that the drugs are imported from China. They go to Mr. Schroeder. Mr. Schroeder is either in Chicago or New Jersey, and Mr. Schroeder is a bit of a linchpin of a conspiracy. And he is supplying not only the tailors in North Carolina, but he is supplying also Miss Kastner, who is in the Western District of Virginia, in Harrisonburg. And so it's an importation, analog importation conspiracy. China is severely plaguing this country, and the conspirators need not all—the law of conspiracy is clear. The conspirators need not all know one another, and they need not know every act that is taking place in fervorance of the conspiracy, so long as they are a willing part of the conspiracy and an overt act that has taken place in the district in which the crime is tried. And you have the tailors and Kastner gearing out of North Carolina and the Western District of Virginia, and both in their own ways through the common supplier, they are helping the conspiracy thrive by playing their part in the sale and distribution of these analogs, and also paying and letting the conspiracy use the proceeds, so they are an integral part of it. Your Honor, I guess I would respond with two points there. First, Your Honor, I don't believe that Mr. Taylor or even Mr. and Mrs. Taylor had any aim to see drugs distributed in the Western District of Virginia. And secondly, I would say that the quote that you gave there about conspiracy and venue, I think that dates back to Hyde v. United States. And so I think what the district court missed here was a little bit of the— No, I was reading from a 2005 Supreme Court decision. Yes, Your Honor, and I was saying that I guess the origin of that statement comes back to Hyde v. United States. So what? I would say that at some point, when you look at these conspiracy cases, you have conspiracies that are more linear where everyone might have a similar— No, but let me just say what my concern is. These conspiracies are growing ever more sophisticated. They have international dimensions. They have international tackles as well as local tackles, and they sprawl over a long area, a large area. And while this phenomenon is going on, you want this court to adopt an interpretation of venue that atomizes the conspiracy at the same time that the conspiracies are sprawling. And it seems to me that undercutting the traditional formulations of venue that could be given not only by the Supreme Court but by this circuit moves in, frankly, a very troubling direction. Because what it would mean is that we would have to have—we would have a dramatic reduction in multi-defendant trials. We would have individual trials here, there, and elsewhere across the circuit and beyond. Witnesses would be called again and again in separate trials. The implications of your argument are simply terrible. Your Honor, I certainly understand the position that the government does need to be able to deal with organized crime. On the venue, I don't contest what Judge Wilkinson has pretty much decided, but whether the absence of a proper instruction here on venue and an absence of a finding by the jury to show that the venue was proven beyond the preponderance of the evidence. It's a different standard, not reasonable doubt. Yes, Your Honor. It's preponderance of the evidence, but it's ordinarily submitted to the jury, we have said. An opinion that was in effect at this time by Judge Shedd. And whether you all properly preserved the venue point. Anyway, we've taken a lot of your time about it, but you said you were the venue expert when you stood up. Yes, Your Honor, and if I could go into my rebuttal time and address this a little further, Your Honor. I would agree with Your Honor that it should have been submitted to the jury. And I think there are countervailing concerns as far as the defendant's constitutional rights to venue that a case shall be tried. Is there any factual dispute over the Harrisonburg say-ups? No, Your Honor. I would say that my clients had no aim or no knowledge of anything happening in Harrisonburg. And if they had been part of the supplier chain. But as a matter of law, that's not required. Well, Your Honor, I think we're really looking at different conspiracies. When you look at cases where you have a direct line of supply, you have a straight line back. And all the cases that were cited by the government as precedent, you've got cases where there's some direct line. But here you've got a completely separate conspiracy to distribute in the Western District of North Carolina than you have in Virginia. And it just opens the door for liability. But the jury didn't ask to resolve that right. They were not, Your Honor. And you say you submitted a proposal to the construction government. I'm not sure you did. But maybe you did. Yes, Your Honor. Thank you. Counsel, Judge Berger has a question. I'm sorry. Thank you. Judge Wilkinson started his question with a preface about the drugs being distributed to the tailors. Is there evidence in this case that drugs were distributed to your client? In other words, we're talking about there being distribution to Kessner in the Western District of Virginia. And to your client and his wife, who I see as separate and distinct defendants in this case, who have separate evidence against him. Is there evidence, or is your client conceding that he is part of a conspiracy with respect to Kessner, who was in the Western District, which establishes venue? Or is there not any evidence that drugs were in fact distributed to Edward Taylor? Your Honor. Do you understand my point? I do, Your Honor. And I don't think Mr. Kessner in the Western District of Virginia had any contact whatsoever with the tailors. I don't think there's even any evidence that they had ever met. And is there evidence that drugs were distributed to your client, Edward Taylor? Your Honor, I would contend that they're not. What happened is the overall distributor, there is some evidence to suggest that the drugs went from him to Dana Taylor, my client's husband. And I would contend that there wasn't sufficient evidence to show that my client was involved in any conspiracy. And I just want, for your purposes, to single out the evidence as it relates to Edward Taylor. There seems to me in the record to be a distinct difference between the amount of evidence with respect to distribution as to Nanya, who owned the shop, and Edward Taylor. The evidence would indicate, if I'm incorrect, please correct me, that he attended the distribution that happened in Burlington with his wife. Prior to that, there is no evidence that Schroeder or anyone else distributed drugs to Edward Taylor, is there? That's correct, Your Honor. All right. Thank you. Mr. Brown. Good morning, Your Honors. Good morning. I would like to touch on Venue as well, but I think it's a little bit different for Mr. Bradley because we're discussing Venue for not the conspiracy to distribute drugs, but the other three counts. Mr. Bradley was charged in all four, and that's a little bit different than the other two appellants before you. Four-circuit case law, including Bowen's, tells us that when defendants are charged with multiple counts, Venue has to be proved for each. Four-circuit cases, including Camara, if I'm saying that wrong, tell us that the act in furtherance of that conspiracy must be committed by a member of the conspiracy. The government is exactly correct when it says it did not have to prove any overt act for the conspiracies, but it is using, relying on an overt act to show Venue. And the stretch for the government is that it's asking the court to find that the act of Mr. Kasner, who's not alleged to be, not shown to be, a member of the other conspiracies, somehow his act is imputed to another conspiracy, and the government's not able to show any authority for that. Now, he's not a named conspirator in count one, or any of the conspiracy counts. That's correct. And he's referred to in the indictment as a, what, conspirator B? Which one is he? Yeah, I think it's B. He's conspirator B. He's not even identified by name in the indictment. So it's conspirator B that the government relied on to get the hook in the Western District of Virginia. Yes, and we've alleged that that might work for count one, but that did not work. And it's specified in count one. That's where the allegations are, and those aren't even realleged in count two. They incorporate prior paragraphs. They do not. They do not. Okay. They do not. Count two, which is the conspiracy to import a controlled substance, does not incorporate the allegations of count one. Okay. Now, count three and count four incorporate realleged paragraphs three through 82, but count two doesn't. I mean, I don't know. It's not reincorporated. And I'll go back and ask the same question, sort of, that I asked before. Is this menu stuff properly preserved? We believe so. If that is, is any of it waived? And did it have to be submitted to the jury? And was it found by the jury? Or is it a legal issue that the judge can decide? We say, and the judge had a case called Engel, I think. Ordinarily, it's a jury question. Ordinarily, it's a jury question by preponderance of the evidence. Most of the time, everybody knows where Richmond is, and if it happened up the street here, the venue's not an issue. I was not counseled below. You're not counseled below, but that doesn't help us, the fact you're not counseled below. We'd be better off maybe if we had somebody who was counseled below, but you're the only one that got it. Review the records. Review the records shows that from the very beginning of the case, venue was an issue. All the defendants were highlighting the fact that this is not where we're from, this is not where we live, this is not where we did business. Just for the sake of preserving the record, this was brought up very early in the case, and Mr. Bradley filed the issue. Did anybody ever tell the trial judge, it has to be submitted to the jury? It has to be submitted to the jury. This is not an issue for the court. I believe the answer is no. With respect to the good question that my colleague Judge Berger raised about the involvement of Edward Taylor, wasn't Mr. Taylor involved in the transaction that we were talking about in the 2015 trial, in the transaction between Niner and the government informant, and wasn't Taylor involved, even maybe I'm directing this to the wrong counsel, but wasn't Taylor involved in 2015 with that same transaction? He participated in a telephone call with the informant, and this was immediately after the informant had spoken with his wife about the anticipated transaction. And then during that phone call, Edward Taylor confirmed the location for the arranged purchase, and the number of packets to be sold. I don't represent Mr. Taylor, but my review of the record. Well, maybe I'm just suggesting that Mr. Taylor was involved in an overt sense, through an overt act, as a participant in the conspiracy. Okay. I don't know how to address that without undermining the potential co-counsel. Your co-counsel has some time for rebuttal. You're the only, your client is the only one of the three on appeal that's charged in all four counts, and they're charged as four separate conspiracies. Yes, Your Honor. So the, I'm back to your venue, which is what, the venue would have to be proven, there are multiple offenses, had to be proven as to each of the alleged offenses. For example, count two would have to be proven that he was, that there was venue in western Virginia of a conspiracy to import from China, or wherever it was. And the government's response to that, and it's brief, is we're relying on Kastner, except he's not, not just not charged, but the proof doesn't even begin to show, it's not even alleged that somehow he's involved with importing from China, with international money laundering, or count three. And without any evidence that Mr. Kastner has anything to do with those conspiracies, the government cannot rely on any act, and call it an overt act, it can't be an overt act if Mr. Kastner is not a member of those conspiracies. The question before the court is, is the act of a non-member of a conspiracy. Well, I handed you a point on count two, it's not alleged in count two. They're not re-alleged, the specifications of count one are not re-alleged in count two. That arguably could help you on count two, maybe. But they are re-alleged in counts three and four, and you've got to deal with that too. Then you've got count one, where they're alleged. Well, I'll say out loud, I think our argument in count two is much stronger as a result, but I'm hoping for all three that because there is no, there's lack of proof of venue, that even, I'm not going to, I don't want this court to review for plain error, I think the motion to dismiss for lack of venue puts it before the court de novo. You think it comes up here on harmless error review? Yeah, and we argue that it's not harmless because. Right, I understand. Yeah. It's not that you're saying this properly preserved, it's not here on plain error review.  Back to you, Your Honors. Thank you. Thank you. Good morning, Jeanne Hudson for the United States. I'd like to pick up with the venue argument, and in the government's view, the record is not entirely clear whether these issues were preserved. It is clear that Mr., to us anyway, that written motions were filed early in the trial alleging venue by all defendants through the pretrial conference where the district court made that clear. Mr. Bradley's particular motion did reference each count in the indictment when he referred to that in his first written motion. And then later, I believe his post-trial motion did also at least in place refer to all of the instances that he was charged with. However, nobody in the district court that I saw was making any particular argument regarding anything but count one in the conspiracy. And that's why, to me, it's a little bit unclear as to whether that was preserved. I also- A lot of times in here, everybody just calls the de-conspiracy. De-conspiracy. And the fact of the matter is there were four counts of separate conspiracies under separate statutes. Yes, and on that note, though, Your Honor, I would also like to point out, unless I misread the brief, I believe that Mr. Bradley has only challenged counts two and four in addition to count one, but not count three, the promotional money laundering. He's challenged the importation conspiracy and the international money laundering conspiracy. Do you think that was just a mistake? I don't know. It's very particularly laid out in one of the headings. And I think the argument is similar, at least on many of the counts. It's not identical. I noticed when Judge Moon one time talked about he left out one of the counts, maybe left out count three and talked about counts two and four. Well, and I wondered even because of the nature of the written pleadings and some of the lack of specificity, I actually wondered, not having been there myself, whether the district court's opinion even intended to address all of the counts. But it certainly didn't ever reference any particular count other than the conspiracy, which is what everybody thinks. Were you involved, Ernie? No, I was not, Your Honor. Well, the conspiracy, I mean, there were counts involving a conspiracy to import, and there were money laundering counts and everything. My sense of it is that when he talked about the conspiracy globally, he was talking about conspiracies that may have had different objects, but that they involved the same actors, and they involved many of the same mechanisms. I mean, the money laundering was a separate conspiracy, perhaps, but it didn't involve different actors, and the money laundering was important to the importation. Right. I mean, those two went hand in glove, and I don't think you can say, we would have to have four separate trials because conspiracies can have different objects. You can have different counts with conspiracies with different objects, but if they involve the same actors and much of the same means, it's not clear that they're all separate conspiracies. But wasn't there an instruction given in this case that you had to find that you couldn't convict if an individual was not a part of a particular conspiracy? I believe that's correct, Your Honor. You could only convict an individual if you found them to be part of a particular conspiracy. I thought that instruction may have been given. I thought that there were particular instructions, of course, with regard to each count, requiring that each defendant guilty of the particular conspiracy. There were, but you can't say that. You're not going to bow down to the fact that one conspiracy was multiple objects. You can't get these consecutive sentences. Then they're going to merge. If you've got one conspiracy, you're going to have to merge. Before we leave this, I wanted to point out two things. One is regarding the importation conspiracy. We have, of course, spent a fair amount of time talking about Mr. Kessner and his connection to the conspiracy here in the Western District of Virginia. But regarding the importation conspiracy count only, from our perspective, the fact that drugs from this conspiracy were transported into the Western District of Virginia establishes venue here for that conspiracy. Did the jury find that? You didn't submit that issue to the jury. It doesn't appear that that was the case. It was alleged that, and Judge Moon made a finding, a ruling to that effect. But how do you get around Abel? Judge Shedd says, ordinarily, it's a jury question.  Ordinarily. It's not always. Well, we got all this. Most of this stuff occurred somewhere else. You've got one hook in Virginia. And you're going to say this is out of the ordinary case. Actually, Your Honor. That the venue didn't have to be submitted to the jury as a matter of law. Sorry. I'm sorry for interrupting. I wanted to point out that in preparation for oral argument, I did find one other connection to the Western District of Virginia. There is a telephone call between Mr. Schroeder and an individual named Randy Lee Cook that was introduced as a government exhibit. Now, who is Schroeder? Mr. Schroeder, as Judge Wilkinson was noting a moment ago, was one of the primary players in this conspiracy. But he's not even named in the indictment anywhere. Well, he had already pled guilty and was cooperating. But he's not a named conspirator. An unindicted co-conspirator. Well, he's not named as an unindicted co-conspirator. You don't say Mr. Schroeder, an unindicted co-conspirator, anywhere in the indictment. And I don't think that matters for venue purposes. But I wanted to point out this. Well, is it the jury? Right, if you've proved it and you've made an interrogatory to the jury, you can figure that out for you. Can I go back to the question as to whether the whole issue is preserved? In your judgment, is it preserved or is it not preserved and why? I think the government was focused on, in our view, the correctness of the district court's opinion that was issued in this case. And we did not argue that it was not preserved for the reasons that I was setting out earlier, that it appeared that Mr. Bradley had at least at a minimum in his written pleadings referenced the offenses, in plural, that he was charged with. So I took that looking at it. What was the venue issue squarely presented to the district court? The defendants definitely argued to the district court that there was insufficient venue for the conspiracy. There were no arguments presented that I saw. And they offered an instruction. And I'm sorry, I didn't recall that. I heard the discussion about that. He read one there. I'm accepting what he said. Judge King indicated that the venue issue is ordinarily presented to the jury. Are there circumstances in which the venue issue may not be presented to the jury? I think in this case, yes, if the jury can find that. Just tell me why. I'm interested in your answer. When it's raised as a legal matter and the court found that there was sufficient venue, the defendants made the arguments that they did in the district court. And the court, at each juncture that it was raised in the district court, addressed only what the defendants raised. If the jury found there was an overt act in the Western District of Virginia, there'd be venue of a conspiracy.  And if it was found by the jury, there would be venue. The problem I have is that question was never presented to the jury. And how would we know they had found such an overt act? And in count two, you don't even allege overt acts. You don't specify any. You don't replete them. And the others, you simply replete by reference. But then you've got this one fellow up there in Harrisonburg. And it's an international conspiracy, the money launderer. You don't say he did any money laundering in Harrisonburg. And it's an international conspiracy to import. It was imported somewhere in, what, Atlanta or Charlotte. But I would argue, Judge King, that even aside from Mr. Kessner, well, not aside from Mr. Kessner, but because of Mr. Kessner being a standing customer of this conspiracy in light of Mr. Schroeder's testimony. Well, what are the conspiracies? Maybe the first one. If there are four. Can I get back to just the question about the venue? It's obviously not a classic element of the crime. It doesn't go to anybody's guilt or innocence, really. And it's proven by preponderance of the evidence, as I understand it, as opposed to beyond a reasonable doubt. So it's a little bit different in those circumstances. Now, was there ever any dispute that was raised before judgment, any dispute at all, that Mr. Kessner was engaged in these drug sale activities and money laundering activities with Mr. Schroeder? Was that brought into question in any way? In the sense that a challenge to the fact that, arguing that it didn't happen or, I don't think so. I mean, yes. Was it brought into dispute in any way in connection with the venue motion? In the venue, we don't think that there's a, as the defendant said, we don't think that there is a venue problem here because Mr. Kessner was not engaged in any sales. In other words, you have to explain to the district judge why in something that's engaged 72 preponderance standards and is different from a classic element of the crime. When we talk about classic elements of the crime, we're setting forth you have to have a men's rest and an actress rest. You have to have these three or four classic elements of conspiracy. Okay? Venue is not listed as one of those classic elements of the conspiracy. It is different in time from the classic questions of guilt and innocence. So the question I have is when it is brought before the district judge and the question is raised as to venue, was there any dispute about the underlying facts? The key question being both for the money laundering and the distributional and all the conspiracy counts, the key question being Mr. Kessner and his sales and his purchases and his distributional activities and his connection to Mr. Schroeder, was there a dispute for venue purposes of Mr. Kessner's activities in the Western District of Virginia? No. And should there have been? Not in the government's view substantively, but if the defendants wanted to preserve the issue, I think the answer would be yes. They offered that instruction. I believe the argument, though, was primarily about whether the defendants were part of the conspiracy with Mr. Kessner. And as the court just heard, whether Mr. Taylor, for example, was part of any conspiracy that involved Mr. Kessner. Mr. Kessner would have to be a conspirator to perform an overt act, to commit an overt act. He had to find he was a conspirator. And the jury has to find it is a preponderance of evidence. It's not an element of the offense. It's constitutional. It's what it is. It's in the Constitution. Counsel, let me follow up on Judge Wilkinson and Judge Keene's questions on venue, and this will be helpful to me. Is it the position of the government that once the district court ruled on the need to submit it to the jury for its determination, is that the position that the government is taking? In other words, the question has been asked about ordinarily, and Judge Wilkinson asked earlier whether or not, when are the circumstances when it does not have to be presented to the jury. So what I want to know from you is, is it the government's position that once the district court ruled on those relations to this myth based on venue, found that venue existed, is it the government's position then that it does not have to be submitted to the jury for its determination by a preponderance? Yes, and especially where there was no challenge, again, to the primary piece of evidence that the government relied on for venue, and also where, in light of the evidence here, I think looking at it from this perspective, there is no concern, at least from the government's perspective, that this conspiracy did absolutely touch the Western District of Virginia. The drugs were distributed here. The drugs that were imported from China were distributed here by the conspirators. That would be as to count one. And as to count two. The drugs that were imported from China were sent to Mr. Kessler. But count two doesn't have to be over an accident. That's the reason I'm re-alleging. But the question I've got, and I'm repeating myself for sure, is the jury didn't find that. And is there a precedent that you want to cite to us for the proposition that it did not, under the circumstances presented here, have to be submitted to the jury? I'm sorry, but I don't have any case handy that supports that view. So you're conceding the case? Don't concede the case. No. Don't concede the case. No, I'm just saying that. You don't want to do that yet. I'm relying on the fact that in the opinion that has been discussed here, it doesn't say it is a requirement, that it's ordinarily. Well, here's what Judge Shedd said. This was in 2012. He was faced up with this. He said, it's not a substantive element. It's similar in nature to a jurisdictional element. We, he's talking about the Fourth Circuit, we recognize that venue is a question of fact in which the burden of proof rests with the government. But unlike other facts in the government's case, it may be proven by mere preponderance of the evidence. And circumstantial evidence can be sufficient. So it's a question of fact. That's what jurors do. And if they didn't, if it's error here, it has to be harmless error for the government to sustain its position if it was preserved. Or it has to satisfy plain error if it wasn't preserved. I'm not asking you to concede your case in the slightest. I'm not sure that I, I don't think I disagree really fundamentally with my friend Judge King. I think ordinarily it would be submitted to the jury. But the question is, when you submit something to the jury, it's because they have some role to perform. And, you know, and the question I have is, was there a dispute over the critical fact of the conspiracy's tie to the Western District of Virginia? And those have to do with Mr. Kessler's distributional activities, with his payments to Schroeder. He is involved centrally in this conspiracy. Now, this, as I understand it, from the passage that my friend Judge King read, this is subject to a harmless error analysis. And the question I have is, yeah, if there's some question, if they had said, wait a minute, Mr. Kessler is not involved in these sales. You've got it wrong. There's no tie to the Western District of Virginia. Mr. Kessler has nothing to do with any of this. And then that's the predicate for the venue discussion. But if it's clear, you know, there may be other objections to Mr. Kessler's counsel. But if the venue motion is not accompanied by some basis and some role for the jury to play and some dispute over Mr. Kessler's tie to the Western District of Virginia number one or his tie to the distributional and money laundering conspiracies that are alleged in the various counts, if there's no dispute as to that, why would Judge Moon be submitting a foregone conclusion to the jury? And isn't that a harmless error thing? I'm very worried about this is a lengthy trial. The district judge, as far as I can see, handled it with a great deal of care. Retrials and do-overs are never as good as the original trial itself. And none of this has any relationship to guilt or innocence, and none of it has any real dispute, as far as I can see, about the fact that Mr. Kessler was operating out of Harrisonburg, Virginia. Harrisonburg, Virginia is part of the Western District of Virginia. He's shipping up payments to Mr. Schroeder. He's distributing the analogs in his locale. And this has been a fair trial. And to require the district judge and the witnesses and everybody to go through it all again seems to me wrong. Your Honor, I would also like to add to that. I do think it's a significant piece of evidence, since we have focused so much on Mr. Kessler, that there was another piece of evidence that was uncontested and was, I don't think, ever brought up in any discussion of anything, and that is this phone call between Mr. Schroeder and Randy Lee Cook in September of 2014. Mr. Cook is in Dayton, Virginia, in the Western District. Mr. Cook called Mr. Schroeder, and they had a discussion about the fact that Mr. Cook had already sent Mr. Schroeder some funds that were purportedly for drugs. And Mr. Schroeder is talking to Mr. Cook and asking Mr. Cook if Mr. Cook wants Mr. Schroeder to send him his money back or whether Cook wants to hang on for a while while Schroeder sees if he can get the things that are coming into the states. I'm just paraphrasing some things from that conversation. So we would suggest that in addition to Mr. Kessler, Your Honor, in the category of uncontested facts were... But this is the point. When you bring up this point of uncontested facts and the different relationships, I don't understand anything that I've said to be contrary to what Judge King has said, and I don't understand anything you've said to be contrary to what my esteemed colleague has said. Ordinarily, if there's some role for the jury to perform, of course the issue of venue should be submitted to the jury. That would be... I would never say venue is never an issue to be submitted to the jury, but there has to be some circumstances with some notion of practicality and the resource expenditure involved in a retrial and the connection, clearly, of an important prong of this conspiracy to the Western District of Virginia. There has to be some practicality involved here somewhere, and that can be done without impairing the principle and infringing upon the principle with which I wholly agree that venue, if there's any question about it, ought to be submitted to the jury. I would not draw back on that basic principle. But under the facts of this case, as the passage that Judge King read from Judge Shedd's earlier opinion, there can be circumstances in which it's harmless. The criminal justice system is never wholly free from some little smidgen of practical assessment, which is what is called for here, without infringing an important general principle, which my colleague has really eloquently enunciated and with which I agree. The government certainly agrees with everything Your Honor has just said. Well, I didn't think you would take it. I thought I would briefly address the arguments regarding Mr. Edward Taylor. I really just wanted to flag for the court that the evidence was clear that he was present in 2013 when the law enforcement agents executed a raid on the store. Well, he was involved with the informant in 2015. Much more importantly. I think that's after they've been scheduled. The analogs were scheduled in 2014. They were. And he was involved in setting up the transaction. As I understand it, he, after Nadia Taylor had had the initial contact with the informant, it's possible that Edward Taylor had had a subsequent follow-up call with the informant. It's my understanding factually accurate, right? I believe they were jointly on the call. She talked first, and then Mr. Taylor talked to the informant, and it was during Mr. Taylor's part of the conversation that the informant said that he needed the 200 packs for Gettysburg Bike Week, and Mr. Taylor repeated the number 200. And then at some point in that conversation said he would talk to his wife further about that. But I think they were both together in the process of coming down to meet the informant in Burlington. So they were at the same time, not a separate telephone call. I think that was together. And then, of course, we would emphasize Mr. Taylor's statements that were made after the fact, where he said that they were there to sell jewelry cases and that that was what they were purportedly negotiating. And as Judge Moon properly held, the jury was absolutely entitled to find that that was not true and did not comport with the facts and common sense. That was after arrest that he made that statement, correct? Yes. During this telephone conversation in which he repeated information to his wife, my recollection is that he repeated to her 200 bags. The informant also indicated to him that bikers really like this, and he indicated he would repeat that to her. What other evidence is there regarding anything being distributed to Ed Taylor or his participation in the conspiracy? I think our evidence, Your Honor, with Mr. Taylor, which is why the court found that there was insufficient evidence to support a conviction as to Mr. Taylor regarding analogs, our evidence really is his participation in the negotiation for making the arrangements for that meeting with the informant, the fact that he heard the number, and later in conjunction with his statement to the officer after his arrest, which again in the government's view was not a truthful statement, and I think Judge Moon correctly found that a jury was absolutely entitled to find as well that it was not truthful. And to ensure that we don't speak too broadly, he was not involved in the actual setting up of this meeting or the negotiations. That part had been with his wife. What he was involved in was those discrete portions of the conversation that we've mentioned. He mentioned 200 bags and he passed on to her or indicated he would pass on to her that bikers really like this stuff. Well, he also, and just to be clear, I don't think he said the word bags. I think he just repeated the word 200 in response to the speaker saying packets or bags. But he also was relaying the address, I think, for the location and having to participate in the discussion about where that would happen. But also, I don't think we can completely overlook the fact that because he was there in 2013 when the store was raided, when they found almost $300,000 in cash in the safe where crystal bubbly hookah packets were taken by law enforcement officers in that raid, and then where he and his wife were both arrested after that, even though the charges were dropped, I think that is also part of the context for evaluating the further evidence that developed in 2015. I think it's important to context. But given, and I know that the government relied on that in the briefing, but given that those charges were dismissed, it would seem to me to be somewhat of a wash in terms of their knowledge as to whether or not it was an analog. It could bode in favor of the government's position or against it inasmuch as the charges were dismissed. But I do understand that the government relied on that in its brief. Thank you. And the last point I wanted to make in response to my colleague's argument really is just to make sure regarding a point in the record. I think the court had mentioned something about the court's instruction on the two prongs of McFadden knowledge. And unless I'm mistaken, instruction number 38 reflects that the court actually eliminated from the instruction the second method of proof regarding identity where the government would be permitted to prove knowledge by showing that a defendant knew the chemical structure and the physiological effect or represented it as such. Are you saying that the men's right instruction required knowledge of the scheduling? Knowledge that the defendant knew that the substance with which he was dealing was some controlled substance that is treated as such by the analog act regardless of whether they knew the identity. And I believe that was discussed at the charging conference in this case and that the court based on the- So you're saying that they got a generous men's right instruction. Yes, because the government would have been permitted to rely on that proof, but the court's instruction took out the second prong in light of the evidence and only- Just as a finisher, how long did this trial last? I think it was three weeks, roughly three weeks. We're probably going to talk about a three-week trial. You know, there's an old adage of Mr. Supreme Court says that the defendant is entitled to a fair trial, but not a perfect one. And when you look overall at the fairness of this trial, it's a very able trial judge in the way he conducted it. In fact, the instructions, as you pointed out, with men's rights seem to go in the direction rightly of the defendant's table because these analogs can be tricky. But at the end of the day, when the sun sets, it was fair. They had their day in court. That's three weeks, three weeks. Nobody's saying that they were cut off from presenting evidence or cut off from cross-examination or from defense that really go to the heart of the fairness of the prosecution. Yes, Your Honor. I don't see my time is up. Thank you. Now, each of the counsel for appellant has rebuttal time. And so, Mr. Thornton. Thank you, Judge Wilkinson. As to the raid in 2013 of Ms. Taylor's shop, nothing that was seized in that raid was ever tested and nothing was ever established to contain any of the substances for which Ms. Taylor was charged in this case. And fast-forwarding to when she went to Steve's letter, and the guy's name was Steve, and that's who she knew him as. He was a government informant. She said that she was in the law. Selling crystal bubbly was in the law. That was her layperson's way of describing how the 2013 dismissal of the charges came out. She believed that what she was doing was legal. And the reason she believed that is because Modern Day Profits, this business situated in Illinois, it called her out of the blue. It said we have something that people want to buy. She's a storekeeper. She wants to sell things that people buy. They told her it was legal. They told her they met with an attorney in Illinois who went through the legalities of it and established that it was legal for them. They had business cards. They sent the stuff to her in regular mail. It came with normal packing. There was nothing about this enterprise that indicated to her. I mean, those are all good arguments, but why isn't that a classic jury argument? Well, it relates to the scienter element. I understand. And you got good instructions on that, as I understand it. What distinguishes this from the other analog cases, Turcotte, Roberts, Long, Klecker, McFadden, is that this defendant, Ms. Taylor, she had no means of determining that this behavior was illegal. Long and Klecker mentioned that a reasonable person could look at chemical structure charts to determine whether the item they're selling is illegal or not. Modern-day defense, Mr. Schroeder from Illinois provided chemical charts, laboratory studies for Ms. Taylor to view, and she did. And she was convinced, based on this presentation to her, that what she was doing was legal. The scienter element was not proven in this case. No rational prior effect could have found that the defendant was in a conspiracy to distribute analog, and the court erred when it denied her motion for judgment of acquittal. Very briefly on the venue matter, all of the affirmative acts that Ms. Taylor was alleged to have undertaken in this case occurred in North Carolina. But if she conspired with the guy in Harrisonburg, and he committed an overt act, he can be prosecuted in Virginia. But she never met him. She never met him. He's a conspirator, and she can be prosecuted there. You can prosecute conspirators, all of them, anywhere. If there was an overt act committed by somebody. The only decent argument she got was that the issue was not submitted to the jury and wasn't instructed by him. There was a motion hearing on the venue argument on February 16, 2017, and I believe the court, as a matter of law, decided that that venue was appropriate in the Western District of Virginia. Ms. Taylor's counsel said… That's what you're saying, that he decided as a matter of law and took it away from the jury. So that's your argument, not that she wasn't conspiring with the guy. The question is whether he was a conspirator and whether he committed an overt act in Harrisonburg area. I'll conclude by saying that wasn't the argument that was made with respect to her connection to the Western District of Virginia by the government at trial. The argument that was made was that she was selling these packets in Charlotte, North Carolina, and somehow they were making their way into the Western District. Does the record show anywhere why they decided that the government decided to get this indictment in the Western District of Virginia? Does the record show that? No, not that I'm aware of. Thank you, sir. Thank you. I'm highly apprehensive to return to the podium, but I'd like to make three very brief points, Your Honor. First, I would say that Judge Wilkinson's concern regarding the issues about whether or not the drugs that went to Mr. Kasner actually came from Mr. Schroeder was raised in front of Judge Moon at page 2542 through 2543 in the record. Normally, you don't get an instruction. You don't always get an instruction unless there's a factual issue and genuine dispute. For example, you may want a trap nut instruction, but unless the issue of a trap nut is genuinely in dispute, you just don't automatically get it. I don't understand how exactly the genuineness of the dispute with respect to Mr. Kasner's ties and activities. You have to prove an overt act. I don't understand the genuineness of the dispute. And, Your Honor, I would say that Judge Moon, when he ruled on the venue argument, he didn't say there's no question of fact that you're ready to consider. He just said, I think venue's been established, and then they moved on. When he says, I think venue's been established, isn't that the same thing as saying there's no genuine dispute that were entitled in the instruction? Because the passage that Judge King read, the venue is simply a little different from the substantive elements of the crime because it can be proved by preponderance. Also, it doesn't really go with guilt or innocence in any real sense, and it's also subject to harmless error analysis. And so, I think there's a strong presumption that it goes to the jury, but I'm not convinced that harmless error isn't applicable. And, in fact, I think that cases of the passage that my colleague read indicated that it would be. Your Honor, I would... And if it's constitutional rather than non-constitutional, it would have to be harmless beyond a reasonable doubt. I grant you that. Anyway, you should have the last word. Go ahead. I would respond that Judge Moon determined by a preponderance of the evidence, but he should have allowed the jury to determine by a preponderance of the evidence. And that when you look at the instructions, particularly when the jurors are told you can find that the conspiracy happened in the Western District of Virginia... Judge Moon was entitled to do that if there was no genuine issue of material fact. And she explains that in this case, too. She says, if a defendant raises an objection, that's the venue, the court must instruct the jury if there is a genuine if, and this is a quote, if there is a genuine issue of material fact with regard to proper venue, citing Perez, citing... That's the Third Circuit. Citing Ebersol, that's a Fourth Circuit case that Judge Wilkinson and I were both on, as a matter of fact. And he quotes from it, submitting the venue question to the jury is an appropriate procedure for resolving a factual dispute relating to venue. So if there's a factual dispute on venue, a genuine factual dispute on venue, it should have gone to the jury, and they should have been told that the government has to prove it by a preponderance of the evidence. And that didn't happen here. And the question... If it should have happened, the question is whether, as Judge Wilkinson said, is an error that we should recognize. Harmless error. Or if you didn't preserve it right, it's a satisfied plenary review. Yes, Your Honor, and I would say that it was preserved was the issue, and that the jury instructions when the indictment is read and it says you can find a conspiracy took place in the Western District of Virginia or elsewhere... And everybody agreed there's one conspiracy, too. I mean, they... There's four conspiracies charged in the indictment. Nobody read the indictment, hardly. Yes, Your Honor. Everybody talks about one conspiracy. And my client was only charged in one, Your Honor, so I think going back to that... I know, but the other one is down there, and there's four of them charged. I agree, Your Honor. When they talk about the conspiracy, how do they know which one you're talking about? I guess it's the one your counsel's name's in, you know. I'm not looking to argue with you here, though. I'm not looking to argue with you either. Your red light's on, too, but... It's been on for a while. Go ahead. Counsel, when you raise the issue that your client was not involved in a conspiracy with Katzen... Yes, Your Honor. ...which was raised, is that not a fact in dispute that goes to the issue of venue in the Western District of Virginia? I would say it absolutely is. I would not have expected you to say it's not. Well, thank you, Your Honors. I've enjoyed it. Mr. Brannon. Thank you again, Your Honors. Judge King, looking at the Joint Appendix, the indictment, starting at page 97, I noticed that the government did not reallege the overt acts for count three. Count two. Count three as well. They didn't? That's what it appeared from reviewing the superseding indictment at counsel's table. If the court... Maybe I'm looking at it wrong. I'm looking at page 118 and 119. Maybe it's another superseding indictment. Well, there was a superseding. Maybe I've got the wrong indictment here. But they say paragraphs three through 82 are incorporated by reference. Is that not the overt acts? I don't know. I'd have to go back and look. Something for me to look at in the report, Your Honor. If the court... In count three, it says the paragraphs three through 82 are incorporated by reference. In count two, it does not say that. And Chip made a good point. In your motion, you challenged count two and count four and skipped three, I think. If there's an inadvertence on my part, I take the blame. We do mention it on page 323 and 69 of the opening brief. Those two and the reply brief noting counts three and four on page 15. We ask the court to review all three. The government's correct when it comes to the instructions. In instruction 34, it appears Judge Moon, going with the government's evidence, goes with McFadden's first way to prove knowledge, and that's the fifth element. Instruction 34, Joint Appendix 3145, saying the defendant has to know that this is a controlled substance analog. The jury instruction error we're alleging is in instruction 40. The Judge Moon undoes all that by instructing the jury that the defendants do not have to know what they're doing is illegal, and we cited the DeMott case out of the Second Circuit in support of a finding that that's a reversible jury instruction error. All right. We thank you. We appreciate the argument. We will come down to the council and proceed to the next case.
judges: J. Harvie Wilkinson III, Robert B. King, Irene C. Berger